Weygandt, C. J.
Fortunately the facts are not in dispute, and the single question of law is clearly defined.
*168 The policy held by the plaintiff is entitled “Limited Payment Life Policy with Double Indemnity for Death by Accident and Increasing Total and Permanent Disability Benefits,” and is in the face amount of $5,000. The premiums thereon have been paid, and the policy is in full force and effect.
This controversy arises by reason of the fact that the defendant company has established a separate reserve against each of the three features of the policy —(1) life insurance, (2) disability benefits, and (3) double indemnity. The company is willing to loan the plaintiff the amount of the life insurance reserve but not the amounts of the reserves against disability benefits and against double indemnity.
The plaintiff contends that the three reserves are in fact but one total reserve against the entire policy and that this is the amount he is entitled to borrow ou his policy. Likewise, he insists that each premium he paid was in one entire amount and not three — one for each reserve-. In other words, it is his view that this controversy involves but one policy, one premium and one reserve.
He concedes that his contention is not supported by the terms of the policy. Instead, he relies on the then provisions of subparagraph (7) of Section 9420, General Code (99 Ohio Laws, 139, 172), under which each such policy was required to contain:
“A provision that after three full years’ premiums have been paid, the company at any time, while the policy is in force, will advance, on proper assignment of the policy and on the sole security thereof, at a specified rate of interest, a sum equal to, or at the option of the owner of the policy, less than, the reserve at the end of the current policy year on the policy and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserve, less a sum not more than two *169 and one-half per centum of the amount insured by the policy and of any dividend additions thereto; and that the company will deduct from such loan value any existing indebtedness on the policy and any unpaid balance of the premium for the current policy year, and may collect interest in advance on the loan to the end of the current policy year; which provision may further provide that such loan may be deferred for not exceeding six months after the application therefor is made. It shall be further stipulated in the policy that failure to repay any such advance or to pay interest shall not avoid the policy unless the total indebtedness thereon to the company shall equal or exceed such loan value at the time of such failure nor until one month after notice shall have been mailed by the company to the last known address of insured and of the assignee, if any.”
The plaintiff contends that these statutory provisions are ambiguous and that any doubt as to their meaning must be resolved against the defendant and in favor of the plaintiff.
The precise question is the meaning of the phrase “the reserve * * * on the policy.”
Answering this question is facilitated by an examination of the provisions of certain cognate statutes and terms of the policy.
Subparagraph (8) of Section 9420, General Code, provides that the policy shall contain a provision which shall upon default in payment of premiums insure a cash value equal to the reserve on the policy with certain adjustments “specifying the mortality table and rate of interest adopted for computing such reserves * * *.”
The policy does contain such a provision.
Subparagraph (9) of Section 9420, General Code, provides that the policy shall contain:
‘ ‘ A table showing in figures the loan values, and the *170 options available under tbe policies each year upon default in premium payments, during at least the first twenty years of the policy, beginning with the year in which such values and options become available.”
In compliance therewith, such a table is set forth in section 10 of the policy, and section 11 thereof contains the specified mortality table and rate of interest for computing the contractual reserve, which is stated to be “for the face of the policy.”
These make it clear that the cash and loan values are based on the reserve for the life insurance feature alone and not on the reserves for disability benefits or double indemnity. Hence, the contention of the plaintiff is without foundation in either the policy or the statutes.
This view is sustained by the authorities. The plaintiff places some reliance on the decision of this court in the case of Chastang v. Mutual Life Ins. Co., 147 Ohio St., 341, 71 N. E. (2d), 270, relating to the same policy here involved. The instant question was not present in that case which concerned merely the amount of dividends payable on different policies.
Among additional reasons for sustaining the view of the defendant is the previously quoted provision of subparagraph (7) of Section 9420, General Code, that the policy must specify “the mortality table and rate of interest adopted for computing such reserve.” (Italics supplied.) A mortality table can not be used to compute a reserve on insurance against disability or insurance against accidental death.
Another complaint of the plaintiff is that the trial court dismissed his petition instead of rendering a declaratory. judgment defining his rights under the terms of the policy. While it perhaps would have been well for the trial court to have adjudged that the plaintiff is entitled to a loan based on the amount of *171 the reserve for the life insurance feature alone, such failure was not prejudicial. Furthermore, no controversy remains, inasmuch as the defendant always has conceded its obligation to loan the plaintiff the amount of this reserve.
The lower courts were not in error, and the judgment of the Court of Appeals must be affirmed.

Judgment affirmed.

Middleton, Taft, Matthias, Hart, Zimmerman and Stewart, JJ., concur.